**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **TARIQ ABUSAAD,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Civil Action No. 3:22-CV-1753-K-BH** |
| | § | |
| **KILOLO KIJAKAZI,** | § | |
| **ACTING COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge**[1] |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Based on the relevant filings, evidence and applicable law, the final decision of the Commissioner of Social Security (Commissioner) denying the plaintiff's claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act should be **AFFIRMED**.

## I.    BACKGROUND

Tariq Abusaad (Plaintiff) filed his application for DIB on October 30, 2020, initially alleging disability beginning on March 13, 2020. (R. at 161-62.)[2] His claim was denied initially on January 28, 2021, and upon reconsideration on March 31, 2021. (R. at 56-67, 69-84.) After requesting a hearing before an Administrative Law Judge (ALJ), he appeared and testified at a telephonic hearing on September 14, 2021. (R. at 27-50.) On January 12, 2022, the ALJ found him not disabled. (R. at 12-21.) On January 19, 2022, Plaintiff appealed the ALJ's decision to the Appeals Council, which denied his request for review on June 17, 2022, making the ALJ's decision the final decision of the Commissioner. (R. at 1-3, 118-20, 159-60.) He timely appealed the Commissioner's decision under 42 U.S.C. § 405(g). (doc. 1.)

---

[1] By *Special Order 3-346*, this social security appeal was referred for proposed findings of fact and recommendation for disposition. (*See* doc. 14.)

[2] The background information is summarized from the record of the administrative proceedings, which is designated as "R." (*See* docs. 11-1, 11-2.) Citations to the record refer to the page numbers at the bottom of each filing; citations to the parties' filings refer to the CM/ECF system page number at the top of each page.

## A. Age, Education, and Work Experience

Plaintiff was born on July 10, 1965; he was 54 years old on the alleged onset date. (R. at 161.) He had a high school education and a bachelor's degree in Business Administration. (R. at 31.) His past relevant work included positions as an assistant manager of a clothing store, a bank teller, and a store manager (both in a store and as a small business owner). (R. at 34-51.)

## B. Medical Evidence

In the 1990s, Plaintiff was involved in a motorcycle accident that caused him back problems. (R. at 372.) In 2018, he was referred to the Spine Clinic, but he did not attend his appointment; he completed part 1 of a "back class", but he did not complete physical therapy. (*Id.*)

In March 2020, Plaintiff complained of pain across his lower back that radiated into his posterior and anterior thighs and backside, which he rated as a 9 on a scale of 10. (*Id.*) His pain worsened while bending and during cold weather, but it improved with walking, and medication provided "some" relief. (*Id.*) He had 5/5 strength and a negative straight leg raise and seated slump test, but he also had 30 degrees of forward flexion with pain. (R. at 375.) He had tenderness to palpation at L2-L5, but he denied any swelling or pain otherwise. (R. at 373, 375.) He was referred for physical therapy, and imaging of his lumbar spine was ordered. (R. at 376.) The imaging revealed moderate disc height loss and bilateral facet arthrosis at the L5-S1 vertebral level, as well as grade 1 L5 retrolisthesis. (R. at 375.)

In July 2020, Plaintiff's pain worsened while bending and during cold weather, but it improved with walking. (R. at 389-90.) He denied any musculoskeletal symptoms, such as joint swelling, back pain, or muscle pain; his pain had decreased to 2/10, and radiation was rare. (*Id.*)

In September 2020, Plaintiff presented to the emergency room, complaining of chronic back pain that worsened while bending, walking, and changing positions, but it improved with

rest. (R. at 414.) He had normal range of motion and negative bilateral straight leg raises on the right, but he had moderate midline tenderness, diminished lumbar extension, and positive bilateral straight leg raises on the left. (R. at 416.) He had generally normal musculoskeletal findings. (*Id.*) He was treated with a steroid and narcotic pain medication, and his symptoms improved. (*Id.*) The imaging showed the presence of mild loss and disc structure at L1-L2 with circumferential disc bulging projecting up to 4 mm, as well as bilateral facet arthrosis at the L5-S1 vertebral level as well as grade 1 L5 retrolisthesis. (R. at 425-26.) In October 2020, Plaintiff complained of back pain, but he had no swelling or tenderness, and all his systems were normal. (R. at 399-400.)

In January 2021, a state agency medical consultant (SAMC) Dorothy Leong, M.D., examined Plaintiff's medical records and opined that he could perform less than the full range of light work; she found he could frequently crawl and kneel, occasionally climb ramps and stairs, but never crouch or climb ladders, ropes, and scaffolds. (R. at 362-64.) In March 2021, SAMC Tom Dees concurred with SAMC Leong's opinions as to Plaintiff's physical RFC. (R. at 78-81.)

In February 2021, Plaintiff reported pain he described as a "knife" in his back after standing for 3 to 45 minutes, but he denied any weakness, and he had normal gait. (R. at 431-33.)

In April 2021, Plaintiff presented for pain management for lower back and knee pain; he wore a knee brace, but he reported that the pain was improving. (R. at 548.) He had completed physical therapy, and his treatment consisted solely of prescription pain medication, which alleviated some of his symptoms, although his treatment providers had considered spine injections. (*Id.*) He had normal muscle strength, negative straight leg raises, negative facet loading pain, normal gait, and no tenderness to palpation of spine/paraspinal muscles or of sacroiliac joints/hips, but he had mild effusion on the medial right knee. (R. at 551.) He was assessed with lower back and right knee pain, but he could bear weight, his pain was improving, and he was "overall stable".

3

(*Id.*) He was advised to exercise daily, and he was discharged from the clinic. (*Id.*)

In May 2021, Plaintiff presented to the Sleep Clinic for a consultation. (R. at 572.) He was positive for back pain, joint pain, and myalgias, but he had normal range of motion. (R. at 579.)

## C.  September 14, 2021 Hearing

On September 14, 2021, Plaintiff and an impartial VE testified at a hearing before the ALJ. (R. at 27-55.) Plaintiff was represented by an attorney. (*Id.*)

*1.  Plaintiff's Testimony*

Plaintiff testified that he was 56 years old, he had a bachelor's degree in Business Administration, and he was not working or doing anything for cash or trade. (R. at 31.) He had a driver's license and drove twice a week or "as needed". (R. at 32.)

Plaintiff's past work consisted of four jobs, which all required him to stand and walk all or most of the day. (R. at 34-38.) The first was "[m]anager of a clothing store"; he had to open and close the store, tend to customers, occasionally handle the "shift money", and perform tasks "that only a manager c[ould] be trusted to do". (R. at 34.) His pain limited what he could do and required him to sit occasionally, for which he was reprimanded, and he was ultimately discharged. (R. at 35.) He then worked as a bank teller; he was given a "special" chair in which to sit due to back spasms, but this caused some friction with management and coworkers, and he was also discharged from this job. (*Id.*) In his third job, Plaintiff worked "[his] way up" to become a store manager of a cellphone store. (R. at 36.) Lastly, he owned and operated a store selling t-shirts and novelties, until the strip mall in which it was located closed; he ordered and stocked items in the store and was able to sit when needed. (R. at 37.)

On cross-examination, Plaintiff testified that his back problems were caused by a motorcycle accident in 1991, and he had worsening degenerative disc disease in the lower two

vertebrae. (R. at 40-41.)

    *2.   VE's Testimony*

    The VE testified that Plaintiff had past relevant work as an assistant manager at clothing store (DOT[3] 189.167-018, light, skilled, SVP-6), store manager[4] (DOT 285.167-046, light, skilled, SVP-7), bank teller (DOT 211.362-018, light, skilled, SVP-5). (R. at 51.)

    The VE first considered a hypothetical individual of Plaintiff's same age, education, and work experience, who could perform light work and frequently balance, stoop, and kneel, occasionally crawl and climb stairs and ramps, but never crouch or climb ladders, ropes, or scaffolds. (*Id.*) This individual would not be able to perform the job of bank teller, but he could perform retail manager, small business owner, and assistant manager jobs. (*Id.*)

    The VE then considered a second hypothetical individual who had the same postural limitations as the first but was limited to sedentary work. (R. at 52.) This exchange followed:

> ALJ:    The individual is 54 [years old], so I need to know if there are transferable skills to sedentary, and if you could identify jobs with those, that those skills would apply to?
>
> VE:    Yes. If I look at the assistant manager training, [] the skills first?
>
> ALJ:    Yes, please, the skills first.
>
> VE:    Okay. Technically, he would plan and prepare work scheduled. He would reconcile credit and cash receipts. He would provide customer service. He would answer phones. He would order merchandise, perform basic math—percentage, adding and subtracting. Would provide inventory data. Would use the computer, probably an Excel spreadsheet, maybe emails. Would resolve customer problems. And may input customer data into the computer.

(*Id.*) "Based upon those skills", this individual could perform sedentary, semi-skilled jobs, such as

---

[3] DOT stands for Dictionary of Titles; SVP stands for Specific Vocational Preparation.

[4] The VE assigned the same DOT code for "store manager" to Plaintiff's past work as the store manager of a cellphone store and as a small business owner of a store selling t-shirts and novelties. (R. at 51.)

an order clerk (DOT: 249.362-026, SVP-4), with 76,000 jobs nationally; civil service clerk (DOT: 205.362-010, SVP-3), with 146,000 jobs nationally; and telephone solicitor (DOT: 299.357-014, SVP-3), with 177,000 jobs nationally. (R. at 52-53.)

On cross-examination, the following occurred:

ALJ:       All right. [Attorney], do you have questions for the [VE]?

Attorney:  Yes, ma'am, just, just kind of one global question regarding the transferable skills that she identified mostly in response to hypothetical number two, and I'll use shorthand.
           [VE], you're familiar with the regulations regarding the transferability of skills at age 55 and over?

VE:        I am.

Attorney:  And would those skills still transfer considering those, those qualifications to someone age 55 and over?

VE:        Yes, I don't believe there would be a vocational adjustment based upon his past work history.

Attorney:  Okay. That's the only question I have, Judge. Thank you.

(R. at 54.)

## D. **ALJ's Findings**

The ALJ issued an unfavorable decision on January 12, 2022. (*Id.* at 24.) At step one, she found that Plaintiff had not engaged in substantial gainful activity since March 13, 2020, the alleged onset date. (*Id.* at 17.) At step two, she found that Plaintiff had the severe impairment of lumbar degenerative disc disease and the nonsevere impairments of hypertension and major depressive disorder. (*Id.* at 17-18.) At step three, the ALJ concluded that Plaintiff's impairments did not singularly or in combination meet or medically equal the required criteria for any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.* at 19.) She expressly considered Listings 1.15 and 1.16. (*Id.*)

Next, the ALJ determined that Plaintiff retained the physical RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except he could frequently balance, stoop, and kneel and occasionally crawl and climb ramps and stairs, but he could never climb ladders, ropes, and scaffolds. (*Id.* at 20.) Based on the VE's testimony, she found at step four that Plaintiff could not perform his past work, but that his past work as an assistant manager was skilled, had an SVC-7, and required planning and preparing work schedules, customer service, ordering merchandise, tracking inventory data, performing computer skills, and resolving customer problems. (*Id.* at 22-23.) At step five, she consulted Medical-Vocational Rule 201.15 and 201.07 based on the VE's testimony, and by considering Plaintiff's age, education, and transferable work skills, she found that there were jobs that existed in significant numbers in the national economy that he could perform. (*Id.* at 23-24.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time since March 13, 2020, through the date of her decision. (*Id.* at 24.)

## II.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding

of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* The court may therefore rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## III.    ISSUE FOR REVIEW

Plaintiff presents the following for review:

The alleged transferable skills obtained from the Plaintiff's past relevant work were nothing more than simple job duties and aptitudes common to all. When the Plaintiff reached advanced age, the ALJ failed to properly analyze whether there would be any vocational adjustment to other work. The Plaintiff could not have acquired transferable skills from his past relevant work as an Assistant Manager because he worked at the job for less than seven months.

(doc. 16 at 5.) He appears to argue that the ALJ's finding that he could perform other work was not supported by substantial evidence because the ALJ erred by (1) finding he had transferable skills from his past relevant work, (2) failing to determine whether any vocational adjustment was

9

warranted, and (3) finding that he had past relevant work as an Assistant Manager. (*Id.* at 10-17.)

## A.  **Past Relevant Work**[5]

Plaintiff argues that he did not have past relevant work as an assistant manager because he did not perform the position long enough to learn it. (doc. 16 at 15-17.)

At Step 4 of the sequential disability determination process, the Social Security Administration (Administration) considers its assessment of the claimant's RFC and his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work performed by a claimant within the past 15 years that is substantial gainful activity (SGA) and that lasted long enough for him to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 404.1565.

SVP, or Specific Vocational Preparation, refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Bayer v. Colvin*, 557 F. App'x 280, 284 (5th Cir. 2014) (unpublished) (citing U.S. Dep't of Labor, *Dictionary of Occupational Titles*, App. C II (rev. 4th ed. 1991)). Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. Social Security Ruling (SSR) 00–4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000). An SVP of 6 means that it would take over 1 year and up to 2 years to learn the job. *Id.*

Nevertheless, the Administration uses the SVP information "only as a guideline" because it "may not accurately reflect the requirements of the job as the claimant performed it." POMS DI 25005.015C. "If the [DOT] indicates a high SVP level for a particular job", the Administration "consider[s] the length of time the claimant did the job and the claimant's education when

---

[5] Because the issue of whether Plaintiff had past relevant work as an assistant manager affects the issues of transferable skills and vocational adjustment, it is addressed first.

determining if the work lasted long enough to be relevant." POMS DI 25005.015C; *see* POMS DI 25001.001(77) ("Per the Department of Labor, a 4-year college degree is equal to 2 years of SVP"). Additionally, "[i]f the claimant performed work that had a continuity of skills, knowledge, and work processes with another job, consider that work when determining if the claimant did the work long enough to learn it, even if the work was outside the relevant period." POMS DI 25005.015C.

Here, Plaintiff's work as an assistant manager meets the definition of "past relevant work". *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(1), 404.1565. First, he worked in that position from late 2019 to early 2020, which is within the 15 years preceding the ALJ's January 2022 decision. (R. at 21); *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(1), 404.1565; *see also Alfred v. Barnhart*, 181 F. App'x 447, 451 (5th Cir. 2006) (unpublished) (finding that claimant's housekeeping work was past work because it was performed within the 15 years preceding the ALJ's decision). Plaintiff acknowledged that he earned more than $14,000 during that time, and he does not contend that it was not SGA. (doc. 16 at 10; *see* R. at 171-72); *see Alfred*, 181 F. App'x at 451 ("Additionally, the record demonstrates that Alfred earned over $12,000 per year working as a housekeeper from 1996-1998", "an amount well in excess of the $500 per month amount presumed to show performance of [SGA]."). Additionally, "there is no evidence indicating, nor does [Plaintiff] claim, that h[is] [assistant manager] job did not last long enough for h[im] to learn how to do it." *See also Alfred*, 181 F. App'x at 451. Plaintiff testified that as assistant manager of a clothing store, he was a "lead worker", was given a key to the store, occasionally did the "shift money", and performed tasks that "only a manager can be trusted to do"; this suggests that when he quit his job due to the job's physical demands, there were no performance issues or indications that he was unable to do the job because he had not learned how to do it. (R. at 34-35); *see generally Alfred*, 181 F. App'x at 451 (noting that the plaintiff testified that "there were no tasks that she

was unable to accomplish at her past job as a housekeeper because of her vision"). The record also shows that *before* working as assistant manager of a clothing store, Plaintiff had worked at two jobs in the sales industry, including managing a cellphone store and his own t-shirt and novelties store, from April 2015 to March 2019, which is a duration far more than the 1- or 2-year DOT requirement for learning an SVP-6 job. (R. at 37-51, 183); *see* SSR 00–4p, 2000 WL 1898704, at *3; POMS DI 25005.015C (providing that a claimant's skills, knowledge, and work processes in other jobs can be considered in determining "if the claimant did the work long enough to learn it").

Moreover, because the VE testified that Plaintiff had past relevant work as an assistant manager, and Plaintiff has not shown that the ALJ could not rely on it, the ALJ could properly rely on her testimony that Plaintiff had past relevant work as an assistant manager despite having performed the job for less than the duration specified by the DOT for a job with SVP-6. (R. at 51); SSR 00–4p, 2000 WL 1898704, at *3; *Newton*, 209 F.3d at 458 (permitting the ALJ to rely on the testimony of a VE in response to a hypothetical question or other similar evidence); *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) ("Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."). Accordingly, Plaintiff has not shown that he did not have past relevant work as an assistant manager, and remand is not warranted on this issue.

## B.  Transferable Skills

Plaintiff also argues that the ALJ's finding that he had acquired transferable skills was "in error of the law" and not based on substantial evidence because the alleged skills were "nothing more than aptitude … or buzzwords" and were "not specific in nature". (doc. 16 at 11-12.)

An individual is disabled under the Social Security Act when he is unable to perform past relevant work and "engage in any other kind of substantial gainful work which exists in the national economy." SSR 82–41, 1982 WL 31389, at *1. While the claimant bears the burden of establishing the first four categories in the disability analysis, this burden shifts to the ALJ at step five to prove that the claimant can complete such work. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The ALJ's finding that a claimant obtained transferable skills from past employment must be supported by substantial evidence. *See Jeffcoat v. Sec'y of Health & Hum. Servs.*, 910 F. Supp. 1187, 1194 (E.D. Tex. Dec. 7, 1995). The Social Security Administration's table of Medical-Vocational Guidelines requires that a claimant of advanced age (55 and over), who is at least a high school graduate, who previously held a skilled or semi-skilled job that he can no longer perform, but who has the RFC to perform sedentary work, is not to be found disabled if he has job skills that are transferable, but must be found not disabled if he does not. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f).

"The transferability of skills depends largely on the similarity of occupationally significant work activities among the different jobs." *Id.* (citing then 20 C.F.R. § 404.1568(d)(1)). "A claimant has transferable skills 'when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work.'" *Surkand v. Barnhart*, 51 F. App'x 483 (5th Cir. 2002) (unpublished) (quoting 20 C.F.R. § 404.1568(d)(1) (providing that the transferability of skills "depends largely on the similarity of occupationally significant work activities among different jobs")). "Transferability is most probable and meaningful among jobs in which: (i) the same or lesser degree of skill is required; (ii) the same or similar tools and machines are used; and (iii) the same or similar raw materials, products, processes or services are involved", but a "complete similarity of all three

factors is not necessary for transferability." *Jeffcoat*, 910 F. Supp. at 1194 (citing 20 C.F.R. § 404.1568(d)(2),(3)).

"Transferable skills 'refer to learned abilities which combine knowledge with coordinated physical movements, such as operating a typewriter, or a learned mental discipline, or an area of expertise.'" *Id.* A claimant's skills and abilities must be "acquired through work [he] ha[s] done which show[s] the type of work [he] may be expected to do." *See* 20 C.F.R. § 404.1565(a). The ALJ "may not base a finding of transferability of skills on aptitudes common to most persons, such as the ability to see, think, use judgment, or use one's hands." *See Jeffcoat*, 910 F. Supp. at 1194 (citation omitted). Similarly, past work lasting 6 months or less will be considered an "unsuccessful work attempt" if the claimant stopped working or his earnings fell below the SGA earnings level due to his impairment or the removal of "special conditions" that permitted him to work. 20 C.F.R. § 404.1574(c)(3); *see Jeffcoat*, 910 F. Supp. at 1194 (citation omitted).

A claimant has transferable skills "when the skilled or semi-skilled work activities [he] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1). In other words, the "semiskilled or skilled job duties of their past work must be so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." *Judith L. W. v. Saul*, No. 3:19-CV-02806-E-BT, 2020 WL 7040904, at *2 (N.D. Tex. Dec. 1, 2020), report and recommendation adopted, No. 3:19-CV-02806-E-BT, 2020 WL 7399051 (N.D. Tex. Dec. 17, 2020) (citing SSR 82–41, 1982 WL 31389, at *5 (S.S.A. 1982)). A claimant who meets the criteria of this section is presumed disabled unless he has a "particularly" transferable skill or vocational asset. *See Jeffcoat*, 910 F. Supp. at 1194. To rebut the presumption of disability, the ALJ is required to show that the individual has skills and/or

14

an educational level that would allow for direct entry into light or sedentary skilled work. *Sergent v. Astrue*, No. 10-CV-01041, 2011 WL 3299051, at *9 (S.D. Tex. Aug. 1, 2011) (citing *Jeffcoat*, 910 F. Supp. at 1194).

Here, Plaintiff testified that he was 56 years old at the time of the hearing, had a bachelor's degree in Business Administration, and had past relevant work as a manager of a clothing store, a manager of a cellphone store, an owner of a store selling t-shirts and novelties, and a bank teller. (R. at 31, 34-38.) He also testified that those jobs required him to "tend[] to customers", open and close the store, count the shift money, do "things that only a manager c[ould] be trusted to do", order inventory, stock merchandise, and conduct sales, but he was not required to plan and prepare work schedules. (R. at 34-38.) He further testified that he stopped working at these jobs because of the physical demands, he was discharged, and the strip mall in which his business was located closed. (R. at 34-50.)

Similarly, the VE testified that Plaintiff had past relevant work as an assistant manager (clothing store), a store/retail manager (cellphone store and t-shirt and novelties store), and bank teller. (R. at 54.) She opined on his "transferable skills to sedentary [jobs]":

> Technically, he would plan and prepare work schedules. He would reconcile credit and cash receipts. He would provide customer service. He would answer phones. He would order merchandise, perform basic math—percentage, adding and subtracting. Would provide inventory data. Would use the computer, probably an Excel spreadsheet, maybe emails. Would resolve customer problems. And may input customer data into the computer.

(R. at 34-39, 52.) Expressly based on these skills, the VE testified that Plaintiff's skills translated to the sedentary, semi-skilled jobs of an order clerk, civil service clerk, and telephone solicitor. (R. at 51-53.) The ALJ specifically determined that the VE's testimony about Plaintiff's acquired

15

transferable skills was consistent with the information contained in the DOT. (R. at 21.)[6] The ALJ also found that based on the VE's testimony, and considering Plaintiff's "age, education, work experience, and [RFC]", Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy". (R. at 20.) Accordingly, the ALJ's findings comport with the applicable regulations and are supported by substantial evidence. *Surkand*, 51 F. App'x at 483 (citing 20 C.F.R. § 404.1568(d); *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citation omitted) ("Since Vaughan offered no evidence that she was incapable of performing the types of work that the ALJ determined were available and that she was capable of performing, Vaughan failed to meet her burden of proof under the disability test")).

Plaintiff correctly notes that he testified that he did not make work schedules in his past work and that he just "followed" the schedules devised by the owner, which contradicts the ALJ and the VE's finding that he had that transferable skill. (R. at 34.) Nevertheless, the relevant skills he reportedly gained from his past work experience—"tending to customers", "basically" running the clothing store, managing a t-shirt and novelties shop with no employees, "order[ing] the stuff", "put[ting] the stuff on the shelves", and "s[elling] the stuff"—significantly overlap with the skills required for those jobs found suitable by the ALJ, i.e., order clerk, civil service clerk, and telephone solicitor. (R. at 34, 37); *Judith L. W. v. Saul*, No. 3:19-CV-02806-E-BT, 2020 WL 7040904, at *5 (N.D. Tex. Dec. 1, 2020) (rejecting plaintiff's argument that the ALJ failed to establish that the claimant's prior jobs had overlapping duties with those proposed by the VE as suitable), *report and recommendation adopted*, No. 3:19-CV-02806-E-BT, 2020 WL 7399051 (N.D. Tex. Dec. 17,

---

[6] Plaintiff does not contend that the VE's testimony conflicts with the DOT; he instead argues that the ALJ erred in finding that he had the transferable skills that were identified by the VE. (*See* doc. 16 at 11-13.)

2020); *see* DOT 249.362-026, 1991 WL 1991 WL 672320 (4th ed. 1991) (providing that the "order clerk" requires order processing for material or merchandise, client interaction, inventory control, invoicing, customer services, and sales); DOT 205.362-010, 1991 WL 671708 (providing that a "civil service clerk" requires recordkeeping, reception duties, filing, customer communication, and typing); DOT 299.357-014, 1991 WL 672624 (providing that a "telephone solicitor" requires cold-calling, customer service, recordkeeping, filing orders, data entry, customer lists, tracking sales, arranging delivery of merchandise).

Because the ALJ's decision demonstrates that she applied the correct legal standard, there is substantial evidence to support her finding relating to Plaintiff's transferable skills. *See Judith L. W. v. Saul*, No. 3:19-CV-02806-E-BT, 2020 WL 7040904, at *2 (N.D. Tex. Dec. 1, 2020) (finding "substantial evidence to support the ALJ's step-five finding"), *report and recommendation adopted*, No. 3:19-CV-02806-E-BT, 2020 WL 7399051 (N.D. Tex. Dec. 17, 2020); *Sergent*, 2011 WL 3299051, at *11 (finding that the ALJ's decision was "the most convincing evidence" that the ALJ "specifically found that Plaintiff had acquired work skills from past relevant work that would allow for direct entry into new positions that were available in the national economy"); *see also Revels v. Sec'y of Health & Hum. Servs.*, 882 F. Supp. 637, 641 (E.D. Mich. Jan. 14, 1994) (finding that the ALJ properly applied the vocational characteristics by specifying that "plaintiff is over 50, has a high school and over education, has worked at a skilled work position at a heavy exertional level and has transferable skills to skilled work"), *aff'd*, 51 F.3d 273 (6th Cir. 1995).

Because Plaintiff has failed to show that the ALJ committed error, remand is not warranted on this issue.

**C. <u>Vocational Adjustment</u>**

Lastly, Plaintiff argues that the ALJ failed to analyze "whether there would be very little, if any[,] vocational adjustment" required. (doc. 16 at 13-15.)

The Social Security Administration's table of Medical-Vocational Guidelines (Grid Rules) provides additional restrictions on finding transferability of skills for claimants of advanced ages. *See Sergent v. Astrue*, No. 10-CV-01041, 2011 WL 3299051, at *9 (S.D. Tex. Aug. 1, 2011). As noted, for the ALJ to find that an individual of advanced age (55 and over), such as Plaintiff, has skills transferable to skilled sedentary work, "there must be little, if any, *vocational adjustment* required in terms of tools, work processes, work settings, or the industry." *See Martin v. Heckler*, 748 F.2d 1027, 1035 n.6 (5th Cir. 1984) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(f) (emphasis added)). "[W]here job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC." *Wells v. Saul*, No. 6:20-CV-00014, 2021 WL 4976724, at *9 (S.D. Tex. June 10, 2021) (citing SSR 82–41, 1982 WL 31389, at *6 (S.S.A. 1982)), *report and recommendation adopted*, No. 6:20-CV-00014, 2021 WL 4973714 (S.D. Tex. Oct. 25, 2021).

Here, on cross-examination, the VE opined on the issue of vocational adjustment:

Attorney:  [VE], you're familiar with the regulations regarding the transferability of skills at age 54 and over?

VE:     I am.

Attorney:  And would those skills still transfer considering those, those qualifications to someone age 55 and over?

VE:     Yes, *I don't believe there would be a vocational adjustment* based upon his past work history.

Attorney:   Okay. That's the only question I have, Judge. Thank you.

(R. at 54.) The ALJ's decision specifically noted the need to consider the Grid Rules in determining whether "a successful adjustment" to other work could be made. (R. at 20.)

Plaintiff contends that the administrative record is "absent of any analysis" on the issue of vocational adjustment, despite the "obvious[]" need for a vocational adjustment from the retail clothing sales industry to a clerical industry and a government service industry. (doc. 16 at 14.) He presents no authority showing that this type of analysis is required. (*Id.*) The relevant caselaw merely requires that there "be" little, if any, vocational adjustment. *See Martin*, 748 F.2d 1027, 1035 n.6; SSR 82-41, 1982 WL 31389, at *6. Second, because three of his four past jobs are "managerial types of jobs"—assistant manager of a clothing store and retail/store manager of a cellphone store and of a t-shirt and novelties store—transferability of his skills to industries differing from his past work—clerical or government industry—"can usually be accomplished with very little, if any, transferability of skills to industries differing from past work experience" so long as they require "similar skills" and meet his RFC. *See Wells*, 2021 WL 4976724, at *9 (citing SSR 82–41, 1982 WL 31389, at *6). Notably, Plaintiff testified that in his past work in a clothing store, he performed tasks "that only a manger can be trusted to do." (R. at 34.) Because substantial evidence supports the ALJ's finding on his transferable skills and his past work experience entails "managerial" work, the evidence suggests that there would be little, if any, vocational adjustment. (R. at 34-37); *Wells*, 2021 WL 4976724, at *9 (citing SSR 82–41, 1982 WL 31389, at *6). Moreover, even if Plaintiff's skills were "so specialized" or were acquired in an "isolated vocational setting" and did not translate readily to other work settings, "[s]ince [he] offered no evidence that []he was incapable of performing the types of work that the ALJ determined were available and that []he was capable of performing, [he] failed to meet h[is] burden

19

of proof under the disability test." *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990)); *see Jeffcoat*, 910 F. Supp. at 1194 (citing then 20 C.F.R. § 404.1568(d)(3)).

Plaintiff also contends that "there is *no* basis" for a finding that the jobs identified by the VE were "so similar" to his previous work that he needed "very little, if any" vocational adjustment. (doc. 16 at 14) (citing 20 C.F.R. § 404.1568(d)(4)) (relating to skill requirements as a vocational factor). This argument ignores the fact that he acquired skills from his past work in management that generally have universal applicability across industry lines. (R. at 31, 34-38); *see Wells*, 2021 WL 4976724, at *9 (citing SSR 82–41, 1982 WL 31389, at *6).

"Because the ALJ found that Plaintiff would not require any adjustment in terms of the tools, work process, work settings, and industry, and because there is substantial evidence in the record to support this finding, the court finds that the ALJ applied the correct legal standard in finding Plaintiff not disabled at step five." *Blair v. Comm'r, Soc. Sec. Admin.*, 2014 WL 5336483, at *12 (E.D. Tex. Sept. 30, 2014) (finding that the ALJ applied the correct legal standard and satisfied his burden at Step Five).

"Any error committed by the ALJ in not specifically asking the VE about the degree of vocational adjustment"—though none was found—"would be harmless because the ALJ's opinion demonstrates she applied the correct legal standard." *Blair v. Comm'r*, 2014 WL 5336483, at *10 (E.D. Tex. Sept. 30, 2014). Remand is not warranted on this issue.[7]

---

[7] Plaintiff further argues that "despite the ALJ's proclamation that the VE's testimony was consistent with the information contained in the DOT, there were clear and obvious inconsistencies between the two", and that the ALJ failed to resolve any conflicts in the written decision between the VE's testimony and the information contained in the DOT. (doc. 16 at 15, 15 n.4.) He did not brief this issue, however, so it is not specifically addressed. Notably, even if considered, it would not change the ultimate recommendation.

## IV.    CONCLUSION

The Commissioner's decision should be **AFFIRMED**.

**SO ORDERED** on this 27th day of June, 2023.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE